UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOHN FUCHS, PATRICK MORIN, ANTHONY
MACAGNONE, MICHAEL CONROY, DAVID
HAINES, GEOFFREY JAMES, JAMES MALCOLM,
WILLIAM MACCHIONE, ALAN EHL, FRANK WIRT,
KEVIN HICKS, JOSEPH OLIVIERI, DALE
STUHLMILLER, ARTHUR GODSELL, ROBERT
CARLINO, PAUL J. O'BRIEN, JR., ROSS PEPE,
RICHARD O'BEIRNE, JAMES LOGAN, ANTHONY
CAROPRESSO, ANTONIO MARTINS and TODD
HELFRICH, as Trustees of the EMPIRE STATE
CARPENTERS WELFARE, PENSION, VACATION,
ANNUITY, SCHOLARSHIP, APPRENTICE-TRAINING,
LABOR-MANAGEMENT COOPERATION and
CHARITABLE TRUST FUNDS,

                        Plaintiffs,                        **REPORT AND**
                                                             **RECOMMENDATION**

              - against -                       CV 05-4906 (ADS) (AKT)

ROWLANTI CONSTRUCTION, INC.,

                        Defendant.
----------------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Following the notation of default and entry of a default judgment against Defendant Rowlanti Construction, Inc.,. ("Rowlanti" or "Defendant), District Judge Spatt referred this matter to me for an inquest as to damages, including reasonable attorneys' fees and costs, if appropriate. *See* DE 8-9.

Plaintiffs are Trustees of the Empires State Carpenters Welfare, Pension, Vacation, Annuity, Scholarship, Apprentice-Training, Labor-Management Cooperation and Charitable Trust Funds (collectively "Plaintiffs" or the "Funds") who brought this action pursuant to

Section 301(a) of the Labor Management Relations Act ("LMRA")[1] and Sections 515 and 502(a)(3) of the Employer Retirement Income Security Act of 1974 ("ERISA").[2] Plaintiffs assert that the Defendant failed to comply with its statutory and contractual obligations to Plaintiffs arising out of a Collective Bargaining Agreement ("CBA") between Defendant and the Empire State Regional Council of Carpenters and/or its predecessor Regional and District Councils (hereinafter the "Union").

Plaintiffs seek an award of unpaid fringe benefit contributions for the period July 1, 2002 through December 31, 2004, as well as interest, liquidated damages, costs and attorneys' fees. *See* Pls.' Mem. of Law in Supp. of an Award of Damages ("Pls.' Mem.") at 2-3. According to Plaintiffs' unchallenged allegations, the full amount owed, including principal contributions, interest, liquidated damages, costs and attorneys' fees, is $285,097.85. *See* Decl. of Anthony Lumia in Supp. of Default Judgment ("Lumia Decl.), ¶¶ 11-20 and Ex. 4.

Based upon the information submitted by Plaintiffs, and for the reasons stated below, I respectfully recommend to Judge Spatt that damages in the sum of $347,789.12 be awarded to Plaintiffs, according to the following breakdown: (1) $203,717.74 for unpaid contributions; (2) $69,575.44 in interest;[3] (3) $69,575.44 in liquidated damages; and (4) $4,920.50 in attorneys' fees and costs.

---

[1] Codified as 29 U.S.C. § 185(a)

[2] Codified as 29 U.S.C. §§ 1145 and 1132(a)(3)

[3] As discussed *infra*, interest continues to accrue at a daily rate of $18.14.

## II. BACKGROUND

The Funds are employee benefit welfare and pension plans established to receive and collect required benefit contributions and to provide various fringe benefits to eligible employees on whose behalf employers contribute to the Funds pursuant to the CBA. *See* Compl. ¶¶ 5-6. The Funds are operated according to the terms of Written Agreements and Declaration of Trust ("Trust Agreements"). *Id.,* ¶ 6. Defendant and the Union are parties to and are bound by the CBA; pursuant to the CBA, Defendant is subject to and bound by the Trust Agreement. *Id.,* ¶¶ 11-12. According to the CBA, the Defendant was required to pay benefit contributions to the Funds in agreed upon amounts and specified percentages on behalf of Union members. *Id.,* ¶ 14. The CBA also provides that in the event an employer is delinquent in making the contributions owed to the Funds, the employer must provide payment for all contributions owed, together with liquidated damages, interest, attorneys' fees and costs, all in accordance with ERISA. *Id.* Pursuant to the CBA, Defendant was required to file employer contribution reports with the Funds and was required to permit and cooperate in audits of its books and payroll records. *Id.,* ¶ 16.

After a payroll audit of Defendant's books and records was conducted on behalf of the Funds, it was determined that there were fringe benefit contributions due and owing to the Funds in the sum of $160,549.89 for the period of July 1, 2002 through December 31, 2004 as a result of work performed by individual employees of Defendant. *Id.,* ¶ 17. To date, no contributions due to the Funds have been paid and such failure to make the required contribution payments constitutes a violation of the CBA and Trust Agreements. *Id.,* ¶¶ 18-19. Further, Defendant's

failure to make the requisite contributions called for under the CBA resulted in a violation of Defendant's statutory duty pursuant to ERISA. *Id.,* ¶¶ 38-40.

Plaintiffs also assert in the Complaint that as a result of work performed by Eric Palmer and Barry Tompkins for the Defendant under the CBA, there were fringe benefit contributions due and owing to the Funds in the sums of $12,779.75 and $31,415.75 respectively and which were not made by Defendant. *Id.,* ¶¶ 25, 32.

Based on the above information, Plaintiffs filed this action on October 20, 2005. *See* DE 1. The Summons and Complaint were served on the Defendant through the New York Secretary of State on December 14, 2005. *See* DE 2. After Defendant failed to answer the Complaint, Plaintiffs moved for entry of default judgment on June 29, 2006. *See* DE 7. A Certificate of Default was entered by the Clerk of this Court on June 30, 2006, and District Judge Spatt entered a default judgment against the Defendant on July 15, 2006. *See* DE 8-9.

### III. DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Restaurant Corp.*, No. 06 Civ. 1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.I.U.I. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 506 U.S. 1080 (1993)). A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05 Civ. 0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d 849, 854 (2d Cir. 1995)).

For purposes of an inquest, the Court generally accepts as true all of the well-pleaded factual allegations set forth in the Complaint, except those related to damages. *See Trustees of the Plumbers Local Union No. 1 Welfare Fund v. Philip Gen. Constr.*, No. 05-CV-1665, 2007 WL 3124612, at *3 (E.D.N.Y. Oct. 23, 2007) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981)). The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek. *See Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158; *see also Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (determining that a Court must still "conduct an inquiry to ascertain the amount of damages with reasonable certainty" after an entry of default).

"The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *LaBarbera v. Les Sub-Surface Plumbing, Inc.*, No. 06-CV-3343, 2008 WL 906695 (E.D.N.Y. Apr. 3, 2008) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir.1997)). Plaintiffs have submitted the following documents in support of their request for an award of damages: (1) Plaintiffs' Memorandum of Law in Support of an Award of Damages [DE 23]; (2) Declaration of Anthony Lumia, outside counsel for Plaintiffs, with annexed exhibits including correspondence with Defendant regarding its failure to Answer the Complaint, billing invoices of Plaintiffs' counsel and Plaintiffs' supplemental statement of damages [DE 19]; (3) Affidavit of Hope Brady ("Brady Aff."), collection supervisor of the Funds, with annexed exhibits including the collective bargaining agreement, the Independent Accountants' Report of Defendant's books and records issued by Schultheis & Panettieri, Eric Palmer's December 13, 2004 Stamp Shortage Report, and

5

Barry Tompkins II's January 6, 2005 Stamp Shortage Report [DE 20]; (4) Affidavit of Barry Tompkins II ("Tompkins Aff.") [DE 21]; and (5) Affidavit of Eric Palmer ("Palmer Aff.") [DE 22].

The Court finds that Plaintiffs' submissions provide sufficient evidence to form the basis for an award of damages. The following discussion assesses the amount of damages to which Plaintiffs are entitled based upon the information set forth in Plaintiffs' supporting documentation and as evaluated by the Court.

### A.     **Unpaid Fringe Benefit Contributions**

Plaintiffs seek to recover unpaid fringe benefits earned by the Union members covered under the CBA between July 1, 2002 through December 31, 2004. Plaintiffs allege that the Defendant entered into the CBA, was required to make certain contributions in accordance with the terms of that agreement, and failed to do so. As determined by a payroll audit conducted by Schultheis & Panettieri, the amount of outstanding and unpaid fringe benefit contributions owed to the Funds has been determined to be $160,549.89. *See* Pls.' Mem. at 4-6. In light of Defendant's default, these allegations are accepted as true and the Defendant is liable for the unpaid fringe benefits. Plaintiffs request of $160,549.89 in unpaid fringe benefit contributions is based on the auditors' calculations.

In support of this request, Plaintiffs submitted to the Court the CBA Defendant entered into as well as the Independent Accountants' Report of Defendant's books and records. *See* Brady Aff., Exs. A, B. Pursuant to Article VII of the CBA, the Defendant was required to make fringe benefit contributions to the Funds in agreed upon amounts based upon the hours of actual employment by its employees. Brady Aff. ¶ 4 and Ex. A at 3-5. Further, Article VII of the CBA

6

allowed the Funds to conduct a payroll audit of Defendant's books and records to ascertain whether all contributions due and owing were paid.  Brady Aff. ¶ 5 and Ex. A at 4.  The Funds audited Defendant's books and records for the period July 1, 2002 through December 31, 2004 through Certified Public Accountants at Schultheis & Panettieri  After comparing the total hours shown on Defendant's payroll for covered employees versus the records of hourly contributions made by Defendant, the accountants concluded that Defendant owed the Funds $160,549.89.  Brady Aff. ¶¶ 5-7 and Ex. B.

     Initially, the Court notes that where a plan recovers judgment in its favor, under ERISA, a plaintiff is entitled to have the defendant pay the full amount of unpaid contributions.  *See* 29 U.S.C. § 1132(g)(2)(A).  This right of collecting unpaid contributions is also provided for in Article VII of the CBA.  *See* Brady Aff., Ex. A at 4.  Additionally, Courts "have found it appropriate to rely on an audit or an auditor's opinion to prove that defendant employers did not make required contributions to funds."  *Hanley v. Orient Beach Club*, 96 Civ. 4478, 1998 WL 65990, at *5 (S.D.N.Y. Feb. 18, 1998) (quoting *Grabois v. Action Acoustics, Inc.,* 94 Civ. 7386, 1995 WL 662127 at *5 n.3 (S.D.N.Y. Nov. 9, 1995); *see also Local 282 Welfare Trust Fund v. A. Morrison Trucking, Inc.,* CV-92-2076, 1993 WL 120081, at *2 (E.D.N.Y. Mar. 30, 1993).  Appendix A to the Independent Accountants' Report clearly establishes, through calculations for each covered employee of Defendant, how the $160,549.89 figure was reached.  Brady Aff.*,* Ex B at 3-5.  Accordingly, this Court finds that Plaintiffs, through the independent audit, have adequately supported their claim for $160,549.89 in unpaid fringe benefit contributions.

     In addition to contributions owed to the Funds as determined by the audit, the Funds' records show that by virtue of work performed for Defendant by Union carpenter  Eric Palmer

("Palmer") from June 30, 2004 through October 19, 2004, there are additional fringe benefit contributions owed in the amount of $12,779.75. Brady Aff., ¶ 9; Palmer Aff., ¶¶ 2-5. Moreover, based upon work performed for Defendant by Union carpenter Barry Tompkins II ("Tompkins") from July 23, 2003 through December 7, 2004, additional contributions of $31,415.75 were also due and owing to the Funds. Brady Aff., ¶ 9;[4] Tompkins Aff., ¶¶ 2-5. Both Tompkins and Palmer allege that Defendant did not provide them pay stubs to reflect the total number of hours worked. Instead, Defendant provided Tompkins and Palmer with their paycheck and a separate slip of paper listing the total hours worked, the total amount paid and the various tax deductions taken. *See* Palmer Aff., ¶ 6; Tompkins Aff., ¶ 6.[5]

On December 13, 2004, Palmer submitted a Stamp/Wage Shortage Report to the Funds regarding 485 hours allegedly worked for Defendant and for which fringe benefit contributions remain unpaid. Attached to the report are the slips of paper given by the Defendant to Palmer with each paycheck. Palmer Aff., ¶ 7 and Ex. A. However, after a review of the attached slips provided by Defendant to Palmer, which cover his June 30, 2004 through October 19, 2004 employment, the Court finds that only 446 hours of the 485 hours alleged are accounted for. Palmer Aff., Ex. A. Taking the 446 hours of work supported by the documentary evidence, and multiplying it by the July 1, 2004 per hour fringe benefit rate of $26.35, pursuant to Article VII

---

[4] The Brady Affidavit mistakenly has two consecutive paragraphs numbered "9." This reference is specifically to the second paragraph which reflects the number "9."

[5] The Court notes that the names of Eric Palmer and Barry Tompkins II do not appear in the Independent Accountants' Report, and thus, these sums have not been already accounted for in the unpaid contributions determined by the accountants.

8

of the CBA, the Court finds that the amount of unpaid contributions owed to the Funds based on the work performed Palmer is $11,752.10.

Also, on January 6, 2005, Tompkins submitted a Stamp/Wage Shortage Report to the Funds regarding 1,265 hours allegedly worked for Defendant and for which fringe benefit contributions remain unpaid, along with the attached slips of paper given to Tompkins with each paycheck by Defendant. Tompkins Aff., ¶ 7 and Ex. A. After a review of the attached slips provided by Defendant to Tompkins, which cover his July 23, 2003 through December 7, 2004 employment,[6] the Court finds that all 1,256 hours of work alleged are accounted for in the documents provided. Tompkins Aff., Ex. A. Taking the 1,265 hours worked by Tompkins and multiplying it by the July 1, 2002 per hour fringe benefit rate of $24.10, and the adjusted July 1, 2004 per hour fringe benefit rate of $26.35 pursuant to Article VII of the CBA, the Court finds that the unpaid contributions owed to the Funds by virtue of the work performed by Tompkins is $31,415.75.

Accordingly, taking the sums of unpaid fringe benefit contributions together, I respectfully recommend to Judge Spatt that damages be awarded in favor of Plaintiffs in the amount of $203,717.74 for these unpaid fringe benefit contributions.

---

[6] The Court acknowledges that Defendant's employment of Barry Tompkins II did not include every week from July 23, 2003 through December 7, 2004.

B.     **Interest On Unpaid Contributions**

Under ERISA, the Funds are entitled to recover interest on the unpaid fringe benefit contributions at "the rate provided under the plan, or if none, 'the rate prescribed under section 6621 of Title 26.'" *Cement & Concrete Workers Dist. Council Welfare Fund,* 06-CV-2953, 2007 WL 2712314, at *3, n.4 (quoting 29 U.S.C. § 1132(g)(2)).

Plaintiffs contend that pursuant to the CBA, they are entitled to interest at a rate of eight and one-quarter percent (8.25%) per annum on all outstanding and unpaid fringe benefit contributions. According to the Plaintiffs, they are owed $33,782.88 in interest from January 1, 2005 through December 31, 2006, with additional per diem interest payable in the amount of $46.28 per day up to and including the date of entry of judgment. *See* Pls.' Mem. at 7-8; Lumia Decl., ¶ 15. In support of an 8.25% interest rate, Plaintiffs provide a copy of the Wall Street Journal from December 29, 2006, which lists the prime rate of interest at 8.25% per annum. *See* Lumia Decl., Ex. 2. However, the Court disagrees that an interest rate of 8.25% should be applied from January 1, 2005 through the entry of judgment.[7] According to the CBA, interest on the unpaid contributions is allowed "at the prime rate." Brady Aff., Ex. A at 4. Plaintiffs seek interest beginning from January 1, 2005 through the entry of judgment. Lumia Decl., ¶ 15. The prime rates on January 1 for each year running from 2005 through 2010 was, respectively, 5.25%, 7.25%, 8.25%, 7.25%, 3.25% and 3.25%. *See* Prime Rate History, http://www.cardratings.com/primerate.html. Thus, the interest calculated on $203,717.74 of unpaid fringe benefit contributions for each year is: (1) $10,695.18 for 2005; $14,769.54 for

---

[7]     Also, the Court computed interest using the unpaid fringe benefit contribution figure of $203,717.74 as determined *supra* as opposed to $204,745.39 sought by Plaintiffs.

10

2006; $16,806.71 for 2007; $14,769.54 for 2008; $6,620.83 for 2009; and $5,913.64 for 2010 up to and including November 23, 2010, with additional per diem interest of $18.14 up to and including the date of entry of judgment. Accordingly, the amount of interest owed to Plaintiffs is $69,575.44. Interest continues to accrue at a rate of $18.14 for each day after November 23, 2010 until judgment is entered.

### C. Liquidated Damages

Plaintiffs also seek an award of liquidated damages as contemplated by the CBA and ERISA. *See* Plfs.' Mem. at 8; Lumia Decl., ¶ 16. Pursuant to 29 U.S.C. § 1132(g)(2) and Section VII the CBA, the Defendant is required to pay liquidated damages in a sum equal to the greater of: (i) interest on the unpaid contributions or (ii) 20% of the contribution deficiency. As 20% of the contribution deficiency ($203,717.74) would yield $40,743.55 while the interest owed to Defendant is $69,575.44, I respectfully recommend to Judge Spatt that Plaintiffs be awarded liquidated damages in sum of $69,575.44.[8]

### D. Attorneys' Fees and Costs

Finally, Plaintiffs seek reimbursement for attorneys' fees and costs totaling $5,620.50. *See* Pls' Mem. at 8-10. Pursuant to 29 U.S.C. § 1132(g)(2)(D) and Section VII of the CBA, when a plan recovers judgment in its favor, a plaintiff is entitled to have defendant pay reasonable attorneys' fees and costs. Under the express provisions of ERISA, "[a]n award of

---

[8] When Plaintiffs supplied the Court with documents in support of an award of damages on January 2, 2007, Plaintiffs sought liquidated damages of $33,782.88, which was 20% of the alleged unpaid fringe benefit contribution of $204,745.39. At that time, 20% of the unpaid fringe benefit contributions owed produced a greater figure than the interest owed on the unpaid contributions. However, since it is now November 23, 3010, the interest owed on the unpaid contributions has surpassed the figure for 20% of unpaid contributions, and thus, serves as the liquidated damages amount available to Plaintiffs.

costs and reasonable attorneys' fees, in an action such as this, to recover unpaid union fringe benefit contributions, is mandatory." *Mason Tenders Dist. Council Welfare Fund. v. A.G.I., Inc.,* No. 03 Civ. 1238, 2005 WL 1565831, at *6 (S.D.N.Y. June 8, 2005) (citing, *inter alia* 29 U.S.C. § 1132(g)(2)); *see also Iron Workers Dist. Council of Western New York and Vicinity Welfare and Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.,* 68 F.3d 1502, 1506 (2d Cir. 1995 (ruling that after the 1980 amendments to Section 1132(g) "Congress thereby made the award of attorney fees mandatory for suits involving delinquent employers").

Plaintiffs seek costs and disbursements in the amount of $250.00. Lumia Decl. ¶ 18. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reidman v. Bonsignore, Brignati & Mazzotta, P.C.,* 818 F.2d 278, 283 (2d Cir. 1987). The Court has determined that the $250.00 figure represents the filing fee for a civil case when this suit was initiated in 2005.[9] Since this amount was incurred by Plaintiffs in connection with filing this action seeking compliance with the CBA by the Defendants, I respectfully recommend to Judge Spatt that Plaintiffs be awarded costs in the amount of $250.00.

Plaintiffs also request attorneys' fees in the amount of $5,620.50. Lumia Decl. ¶¶ 18, 20. Courts within the Second Circuit determine appropriate attorneys' fees according to a standard of a "presumptively reasonable fee."[10] *See Arbor Hill Concerned Citizens Neighborhood Ass'n v.*

---

[9] Pursuant to the Deficit Reduction Act of 2005 (Pub. L. 109-171), the filing fee for civil cases filed after April 9, 2006, increased from $250 to $350.

[10] The Second Circuit has recommended abandoning the term "lodestar" as its meaning "has shifted over time, and its value as a metaphor has deteriorated to the point of unhelpfulness." *Arbor Hill*, 522 F.3d at 190.

*County of Albany*, 522 F.3d 182, 183, 189 (2d Cir. 2007). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184.

The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Comm'n Services, Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136 (2d Cir. 1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v.*

13

*Stenson*, 465 U.S. 886, 896 n.11 (1984). In order to apply out-of-district rates, a party must overcome a presumption in favor of the forum rule. *See Simmons v. New York City Transit Auth.,* 575 F.3d 170, 172 (2d Cir. 2009); *Arbor Hill*, 522 F.3d at 191. To overcome the presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons,* 575 F.3d at 172. The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974)[11] and remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

In 2007, the Eastern District observed that "[o]verall, hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $200 to $250 for senior associates, $100 to $150 for junior associates, and $70 to $80 for legal assistants." *Cho v. Koam Medical Services PC,* 524 F. Supp. 2d 202, 207 (E.D.N.Y. 2007) (awarding fees in FLSA and New York Labor Law case based on $250 hourly rate for partner, $150 hourly rate for associate, and $75 hourly rate for legal assistant). It appears that these figures, with minimal changes, remain in effect. *See Said v. SBS Elecs., Inc.*, No. CV 08-3067,

---

[11] The *Johnson* factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitation imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Johnson*, 488 F.2d at 717-19.

2010 WL 1265186, at *10 (E.D.N.Y. Feb. 24, 2010) (holding that "hourly rates for attorneys approved in recent Eastern District of New York cases have ranged from $200 to $350 for partners, $100 to $150 for junior associates, and $70 to $80 for legal assistants."). However, in ERISA default cases such as *Cho*, Courts in this District have consistently approved rates that are closer to the lower range of fees allowed. *See, e.g., Trustees of the Plumbers Local Union No. 1 Welfare Fund,* No 08-CV-116, 2009 WL 2461738, at *4 (finding reasonable for a team of three associates and four paralegal hourly rates ranging from $75.00 to $200.00); *Finkel v. Tripe A Group Inc.,* No. 07-CV-2653, 2010 WL 1688359, at *3 (E.D.N.Y. Apr. 27, 2010) (in delinquent contribution case under ERISA, the court found attorney's hourly rates ranging from $200 to $225 to be reasonable); *Gesualdi v. Mack Excavation & Trailer Serv., Inc.,* No. 09-CV-2502, 2010 WL 985294, at *3 (E.D.N.Y. Mar. 15, 2010) (awarding attorney's fees based on a $275 hourly rate in ERISA default judgment action based upon counsel's 40 years of legal experience and ERISA experience).

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case." *Fox Indus., Inc. v. Gurovich*, No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation. . . ." *Cho*, 524 F. Supp. 2d at 209 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). A party seeking an award of attorney's fees bears the burden to document "the hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney

and legal assistant, the date, the hours expended, and the nature of the work done." *Cho*, 524 F. Supp. 2d at 209 (internal citations, quotation marks, and alteration omitted).

Counsel for Plaintiffs, Meyer, Suozzi, English & Klein, P.C. charged Plaintiffs: (1) $225 per hour for time billed by Partner John Byington III; (2) $190 per hour for time billed by Partner Marty Glennon; (3) $175 per hour for time billed by associate Anthony Lumia; and (4) $75 per hour for time billed by legal research assistant Elizabeth Murphy. Lumia Decl., ¶ 19. Plaintiffs' counsel also provided its time records through December 25, 2006. These records support attorneys' fees of $4,670.50 for 28.05 hours expended. *See id.,* Ex. 3. The time records describes who and what tasks were performed on behalf of Plaintiffs in connection with the case, the dates on which such tasks were performed and the amount of time expended. *Id.* Based upon the documentation provided to the Court, I find counsel's hourly rates to be reasonable, and such rates are well within the parameters found reasonable by other courts in this District, as discussed above. Likewise, the number of hours expended in bringing this case to resolution, where activity began in May 2005 and formal suit was brought in October 2005, is also reasonable.

However, Plaintiffs' request for attorneys' fees of $700.00 for four additional hours expended in connection with preparing the application and accompanying affidavits for default judgment (Lumia Decl., ¶ 20) must be denied as counsel did not support this request by providing contemporaneous time records. *Cho*, 524 F. Supp. 2d at 209. Counsel states that at the time it filed documents to support the damages incurred, the four hours had not yet been entered on the firm's billing history and billed to the client. *See* Lumia Decl., ¶ 20. In light of this information, it is my recommendation that Plaintiffs' counsel be permitted to supplement the

request expeditiously by providing the contemporaneous billing records which should have been entered on the firm's billing records by this date and sent to the client.

Accordingly, until such time as any further supplementation is made, I respectfully recommend to Judge Spatt that Plaintiffs be awarded attorneys' fees in the amount of $4,670.50, bringing the total award for attorneys' fees and costs to $4,920.50.

## IV. CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Hurley that Plaintiffs be awarded $347,789.12 in damages plus $18.14 for each day after November 23, 2010 until judgment is entered, pursuant to the following amounts:

- $203,717.74 for unpaid fringe benefits;

- $69,575.44 for interest on the unpaid fringe benefits through November 23, 2010, with additional interest accruing at a daily rate of $18.14 until judgment is entered;

- $69,575.44 in liquidated damages;

- $4,920.50 in attorneys' fees and court costs

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, any objections to this Report and Recommendation must be filed within fourteen (14) days of service. Each party has the right to respond to the other's objections within fourteen (14) days after being served with a copy. *See* Fed. R. Civ. P. 6(a),(e), 72. All objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley. Any request for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the period for filing

objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir.), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED.**

Dated: Central Islip, New York
November 23, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge